**STATE of Minnesota, Respondent,**

v.

**Fabian CAMPA, Appellant.**

**No. C3–86–6.**

Court of Appeals of Minnesota.

July 8, 1986.

Review Denied Aug. 27, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellant Fabian Campa was convicted of intrafamilial sexual abuse in the first degree, Minn.Stat. § 609.3641, subd. 1(2)(e) (1984), as renumbered § 609.342, for sexually abusing his stepdaughter. He challenges several evidentiary matters and raises a sentencing issue involving his criminal history score. We affirm and remand.

## FACTS

Appellant was married to Pamela Campa and also lived with Pamela's daughter, T.H., born May 15, 1978. Between January 1982 and December 1983 Pamela worked as a housekeeper on weekdays from 7:00 a.m. to 3:00 p.m. and every other weekend. During this time, T.H. went to day care and then to latchkey pre-kindergarten in January 1983. Appellant often babysat on weekends and evenings. Appellant and Pamela separated in April 1983 and were divorced that August.

Pamela testified about T.H.'s behavior in 1982 and 1983. She testified that T.H. became moody, hyper, nervous, bit her nails, and had frequent nightmares. Pamela noted several instances in which T.H. initiated sexual acts with boys in the neighborhood. Pamela also received a suggestion from T.H.'s first-grade teacher regarding T.H.'s behavior and took T.H. into counseling.

On April 8, 1985, T.H. began seeing Dr. Lynne M. Blum, a licensed psychologist. Dr. Blum stated that T.H.'s social development skills were abnormal in that she was sexually precocious and unfamiliar with limits on sexual behavior. T.H. believed that to show affection with other children she had to engage in some kind of sexual activity with them.

In her fourth therapy session, T.H. volunteered that appellant had touched her, pointing to the vaginal area of an anatomically correct doll. At the next session T.H. described appellant kissing her lips and her vagina, getting into the bath with her and placing his foot on her vagina. She described how appellant would enter her bedroom, pull up her nightgown, lie on top of her without his clothes on, and put his "wiener" in her vagina. She stated these things happened more than once and during the time she was in nursery school.

Dr. Blum believed T.H. had been sexually abused, and she reported to the police as required by law. St. Paul Police Sergeant Lisa Millar interviewed T.H. T.H. told Millar that appellant had touched her "bagina" with his hands and toes, kissed her lips, took a bath with her, and had laid on top of her without his clothes on. T.H. was subsequently examined by Dr. Carolyn Levitt at Children's Hospital. T.H. repeated what happened to her. She also told Dr. Levitt that she bled once in bed and that it hurt when she urinated. Dr. Levitt's exam revealed some stretching and tearing of T.H.'s hymen, consistent with penetration by force. This was also consistent with causing pain and producing bleeding and soreness upon urinating, as T.H. described. Dr. Levitt also concluded that T.H. was the victim of sexual abuse.

T.H. testified at trial generally consistent with the incidents she described to Dr. Blum, Sgt. Millar and Dr. Levitt.

Appellant testified and agreed that in an interview he had told Sgt. Millar that T.H. would not lie about the allegations. Appellant told Millar he had washed T.H.'s vaginal area at least twice with a handcloth, and once with just his fingers and soap. He also told Sgt. Millar T.H. slid down while they were in the tub, contacting her vagina with his toes. Appellant also said he kissed T.H. near the vagina when she had hurt herself. Appellant denied committing oral sex with her, but said that he didn't know whether he had penetrated

T.H. At trial appellant denied sexually touching T.H.

Following his conviction for intrafamilial sexual abuse in the first degree, appellant was sentenced to 65 months in prison, based on a severity level VIII offense and a criminal history score of 2.

## ISSUES

1. Did the trial court's evidentiary rulings during the testimony of Drs. Blum and Levitt deny appellant a fair trial?

2. Was appellant improperly assessed a custody status criminal history point?

## ANALYSIS

### I.

Appellant claims he was denied a fair trial because of improper medical expert testimony.

■ 1. In her testimony, Dr. Blum stated that T.H. was very loyal to appellant initially. In discussing the fact that T.H. was not afraid of appellant, Dr. Blum offered an example that even after T.H. saw appellant strike her mother, she did not fear he would do the same to her. An objection was made and an off-the-record bench conference was held.

In cross-examination, Dr. Blum was asked "And, isn't it also true that she's not afraid of Mr. Campa?" In her response, Dr. Blum said "she has a high regard for him because she has seen him be violent toward her mother * * *." The trial court struck this and instructed the jury to disregard the response.

Appellant subsequently moved for a mistrial, claiming that Dr. Blum's references to appellant's striking his wife was prejudicial in the eyes of the jury. The trial court agreed essentially with the prosecutor that Dr. Blum's non-responsive remarks were not particularly egregious and stated that an instruction that the relationship between appellant and his wife is of no relevance in deciding the issues would be given. Defense counsel later refused such an instruction.

Arguably the first reference to appellant's conduct toward his wife was relevant evidence as bearing on the relationship between appellant and T.H., i.e. that T.H. was unafraid of appellant. *See State v. Becker,* 351 N.W.2d 923 (Minn.1984); *State v. Blanchard,* 315 N.W.2d 427 (Minn.1982). In any event, neither the first nor the second reference to appellant's violence to his wife was prejudicial. The testimony was almost an oblique reference, made in passing, and did not affect the fairness of the trial. *See State v. Hanson,* 382 N.W.2d 872 (Minn.Ct.App. March 4, 1986).

■ 2. In the course of her testimony, Dr. Blum was asked to give her professional opinion on whether T.H. had been sexually abused. This was, of course, proper testimony. *State v. Myers,* 359 N.W.2d 604 (Minn.1984). However, in stating the basis for her opinion, Dr. Blum began by saying, "Well, I think there are two indicators. First of all, not only her personal report, *which I believe to be true,* there are two other indicators other than that." (Emphasis added.) No objection was made.

While Dr. Blum's opinion on the truthfulness of T.H.'s report is improper, *Id.* at 611, the error does not mandate a new trial. First, no objection was made. *Id.* Second, the opinion was not elicited by the prosecutor, but was volunteered. Third, the remark was of a passing nature and not relied on or called to the jury's attention. Finally, the evidence is overwhelming against appellant. No new trial is required. *See State v. Bellotti,* 383 N.W.2d 308, 317 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. April 24, 1986).

■ 3. In their testimony, both Dr. Blum and Dr. Levitt stated that T.H. identified appellant as her abuser. This evidence was properly admissible in this case. T.H. testified at trial. Her prior consistent statements were admissible to corroborate her testimony as a sex crime victim. *State v. Blohm,* 281 N.W.2d 651 (Minn.1979); *State v. Hess,* 281 N.W.2d 491 (Minn.1979). Appellant's reliance on *Bellotti,* 383 N.W.2d at 312, is misplaced because in that

case the court was discussing a child victim's testimony to a doctor as part of a hearsay exception under Minn.R.Evid. 803(4) dealing with statements made as part of a medical diagnosis or treatment. Moreover, no objection was made at trial. *State v. Odenbrett*, 349 N.W.2d 265 (Minn. 1984); *State v. Richardson*, 372 N.W.2d 368 (Minn.Ct.App.1985).

## II.

Appellant was convicted of first degree intrafamilial sexual abuse, involving multiple acts committed over an extended period of time, in this case, January 1982 to December 1983. Appellant had a prior conviction for theft by mail, in which his federal probation was discharged on March 20, 1983.

At sentencing appellant was given a criminal history point for his conviction and a custody status point for being on probation at the time the current felony was committed. Minnesota Sentencing Guidelines II.B.2. At sentencing, defense counsel did not object to the additional custody status point. On appeal, appellant argues that the jury verdict does not necessarily reflect a finding that he committed an act of sexual abuse while he was on probation. He claims that when there is an ambiguity, he is entitled to the benefit of the doubt and is entitled to a reduced criminal history score to 1. *State v. Cromey*, 348 N.W.2d 759 (Minn.1984).

The State has the burden of establishing a defendant's criminal history for sentencing guideline purposes. *State v. Edmison*, 379 N.W.2d 85, 87 (Minn.1985). In *State v. Olson*, 379 N.W.2d 524 (Minn. 1986), the Minnesota Supreme Court stated:

> Consistent with the rule that it is the trial court's function to make any findings of fact bearing on sentencing, we have held that it is for the trial court to resolve factual disputes bearing on the exercise of its discretion to depart from the presumptive sentence in appropriate cases. *State v. Winchell*, 363 N.W.2d 747 (Minn.1985). Also consistent with

the general rule, we have held that it is the trial court's role to resolve any factual dispute bearing on the defendant's criminal history score. *State v. McAdoo*, 330 N.W.2d 104 (Minn.1983).

*Id.* at 527 (footnote omitted). We remand to the district court for determination of this issue.

## DECISION

Appellant was not denied a fair trial by any evidentiary matters which occurred during the testimony of expert witnesses. We remand to the trial court for determination of appellant's criminal history.

Affirmed and remanded.