**Richard SWENSON, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C2–88–96.

Court of Appeals of Minnesota.

July 19, 1988.

James Christopher Cuneo, Bradford Colbert, Smith, Juster, Feikema, Malmon & Haskvitz, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas F. Pursell, Asst. Atty. Gen., St. Paul, Wayne Swanson, Polk Co. Atty., Crookston, for respondent.

Heard, considered and decided by HUSPENI, P.J., and NORTON and THOREEN *, JJ.

## OPINION

HUSPENI, Judge.

In January of 1986, a jury found appellant, Richard Lee Swenson, guilty of arson

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

in the second degree. His conviction was affirmed by this court. Subsequently, his petition to the supreme court requesting further review was denied.

On September 25, 1987, appellant petitioned for postconviction relief alleging ineffective assistance of appellate counsel and requested a new trial or alternatively a new appeal. The petition was summarily denied. In January, 1988, appellant's motion for reconsideration of the postconviction relief petition was also denied.

This appeal followed. Appellant claims his counsel conceded an issue on appeal, so precluding review by this court, and that this action amounted to ineffective assistance mandating a new trial or alternatively a new appeal. We affirm.

## FACTS

On July 13, 1985, an abandoned pizza building located in Crookston, Minnesota, was burned down. Appellant was charged with second degree arson and was later found guilty by jury verdict. An appeal was filed challenging the conviction.

Appellant was represented by the state public defender; the appellate brief was written by an assistant state public defender. One issue raised by appellant on appeal was whether he was denied due process at trial because of the prosecution's alleged failure to timely disclose results of the analysis of debris from the area believed to be the starting point of the fire. Appellant argued there was a reasonable inference the prosecutor wilfully withheld the evidence knowing prior to trial that the test results were exculpatory.

After appellant's reply brief was filed in the initial appeal, the prosecutor complained to the state public defender of inaccuracies in appellant's brief. On October 7, 1986, the state public defender wrote to the chief judge of this court "to make certain it is clear to the Court that [the prosecutor] had no knowledge of the testing or the exculpatory results of the testing by the B.C.A. before trial."

The case was submitted without oral argument, and this court affirmed the trial court by opinion filed December 2, 1986, which read, in part:

At trial, while cross-examining the arson investigator, defense counsel learned of the lab report. He immediately moved for a mistrial because the report had not been disclosed in pretrial discovery. The prosecutor denied knowing the tests had been run. The trial court ordered the report to be delivered to defense counsel and offered him the opportunity for a continuance. After reviewing the report, defense counsel offered to withdraw the mistrial motion if the prosecutor would allow the report in evidence without calling the laboratory analyst. The prosecutor agreed.

*State v. Swenson,* 396 N.W.2d 855, 857 (Minn.Ct.App.1986) (footnote omitted), *pet. for rev. denied* (Minn. Feb. 13, 1987) (*Swenson I*). The following footnote appeared in the "Facts" section of *Swenson I:*

On appeal appellant's attorney agrees the prosecutor had no knowledge of the testing or the exculpatory results of the testing before trial.

*Id.* 396 N.W.2d at 857 n. 1. The "Analysis" section of *Swenson I* reads in part:

It is undisputed on appeal that the county attorney did not know about the testing or the report before trial. The failure to disclose the report was apparently inadvertent.

* * * We fail to see how the prosecution's violation prejudiced Swenson's case. The report was admitted at trial. Additionally, Swenson's attorney was offered a continuance to evaluate the report and his case in light of the report. Instead, Swenson's attorney negotiated the admissibility of the report and withdrew the mistrial motion. Any prejudice which might have occurred was ameliorated at trial.

*Id.* 396 N.W.2d at 858.

On December 8, 1986, the assistant public defender withdrew from the case. At the same time, appellant was contacted by the state public defender and was provided a copy of the public defender's October 7 letter to this court. Subsequently, the supreme court appointed other counsel to rep-

resent appellant in his petition for further review. Additionally, the time for filing the petition was extended.

In his petition for review by the Minnesota Supreme Court, appellant argued: "The Court of Appeals placed emphasis on the fact that the prosecutor's failure to disclose the subject report was inadvertent;" and that this court improperly "looked only at the culpability of the prosecutor" in determining whether appellant's case was prejudiced by the nondisclosure. At the time of his petition for review by the supreme court, appellant knew the contents of the state public defender's October 7 letter but did not contend that this court had erred by considering the letter's contents in reaching its decision. The supreme court denied appellant's request for further review.

Appellant next petitioned for postconviction relief, alleging ineffective assistance of appellate counsel and seeking either a new trial or a new appeal. On December 1, 1987, the postconviction court summarily denied appellant's petition and stated:

> The Appellate Court dealt with the subject matter of [the] letter to the Chief Judge concerning exculpatory evidence not disclosed by the prosecution. The Appellate Court considered the merit of the matter and observed the manner in which the appeal was presented. It would be presumptuous and improper for the trial court to review the Appellate Court proceedings unless the trial court is specifically directed to do so by the Appellate Court.

Appellant next moved for reconsideration of the December 1987 order. He made an offer of proof stating that should he be given a hearing, he would testify that:

> c. Until after the Court of Appeals ruled on his appeal, he had no idea that there were communications between the County Attorney and the State Public Defender relative to issues presented on appeal. Similarly, it was not until after his conviction was affirmed by the Court of Appeals, that he learned of [the] October 7, 1986 letter to the Court of Appeals, and of the conflict between attorneys assigned to represent him.

> d. He would not have consented to removal of issues from the presentations on his behalf to the Court of Appeals.

Appellant also stated that both the state public defender and his assistant would testify consistent with affidavits attached to the offer of proof. The motion was denied.

This appeal followed. Appellant argues that his right to effective assistance of counsel on appeal was denied when without prior consultation his attorney conceded an issue before this court. Additionally, he argues that he was improperly denied his right to a postconviction hearing where there were material facts to be proven and additional issues which were not resolved in his previous appeal. Finally, appellant requests we not remand for a postconviction hearing because we have before us all of the evidence that would have been considered by the postconviction court. Instead, appellant requests we grant either a new trial or a new appeal.

### ISSUE

Is appellant entitled to either a new appeal or a new trial because of the alleged ineffective assistance of his counsel on appeal?

### ANALYSIS

When contesting a conviction, a litigant has the right to effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 836–37, 83 L.Ed.2d 821 (1985); *Beavers v. Lockhart*, 755 F.2d 657, 661 (8th Cir.1985); *Garasha v. State*, 393 N.W.2d 20, 22 (Minn.Ct.App. 1986). In *Evitts*, the Supreme Court did not need to determine the appropriate standards for judging claims of ineffective assistance of appellate counsel. *Evitts*, 469 U.S. at 392, 105 S.Ct. at 833–34. The *Evitts* court, however, reiterated the rule in *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) that: "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Evitts*, 469 U.S. at 395, 105 S.Ct. at 835–36.

The *Strickland* court held that: "An ineffectiveness claim * * * is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70. The proper standard for attorney performance at trial is that of reasonably effective assistance. *Id.* at 687, 104 S.Ct. at 2064. The claimant would have the burden of proving the attorney's representation fell below an objective standard of reasonableness. *Id.* at 687–88, 104 S.Ct. at 2064–65.

■ Our reading of *Evitts* does not lead us to conclude that a different standard should be applied when assessing the effectiveness of assistance of appellate counsel. However, even if an appellate counsel's representation was professionally unreasonable, this "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. at 2066. Furthermore, the *Strickland* court counseled:

> The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed.

*Id.* at 697, 104 S.Ct. at 2069–70. In compliance with the *Strickland* mandate, we examine initially the question of prejudice.

■ Appellant's argument to the postconviction court and to this court on appeal is essentially that the October 7, 1986, letter to this court during pendency of the direct appeal improperly conceded a viable issue; that this court accepted the concession; that an issue which should have been addressed by this court on direct appeal was not;[1] that appellant was thereby de-

nied effective assistance by his appellate counsel; and that prejudice resulted. Implicit in appellant's argument, we believe, must be the assumption that the *Swenson I* court would have granted appellant's requested relief if it had considered on the merits the question of when, in fact, the prosecutor learned about the exculpatory test and whether the prosecutor wilfully failed to disclose this test evidence to the defense.

If we conclude that the result reached in *Swenson I* would have been the same without consideration of the challenged October 7, 1986, letter, then it must follow that the "sufficient prejudice" test of *Strickland* has not been met and no further inquiry is needed.

Our examination of the *Swenson I* opinion convinces us that, notwithstanding the reference to the October 7, 1986, letter, that court did address the merits of the issue which appellant raises here, and effectively determined that appellant had, in fact, waived any right he may have had to challenge the prosecutor's nondisclosure of the report:

> The crucial factor in determining whether a conviction should be reversed because of a discovery violation is the existence of prejudice. *See State v. Smith,* 367 N.W.2d 497, 502 (Minn.1985). We fail to see how the prosecution's violation prejudiced Swenson's case. The report was admitted at trial. Additionally, Swenson's attorney was offered a continuance to evaluate the report and his case in light of the report. Instead, Swenson's attorney negotiated the admissibility of the report and withdrew the mistrial motion. Any prejudice

---

1. An alternative basis for resolution of this appeal presents itself. Appellant's argument to this court at present is that a matter not of record was the basis for the *Swenson I* court's conclusion that nondisclosure was inadvertent. This is an allegation of error for which appellant had a remedy in the supreme court.

The petition for certiorari was filed January 21, 1987. There can be no doubt but what counsel was aware of the October 7, 1986, letter when the petition for certiorari was filed. Appellant could have brought any alleged error of this court to the supreme court's attention.

*Hoyt Investment Co. v. Bloomington Commerce and Trade Center Associates,* 418 N.W.2d 173, 176 (Minn.1988). Although appellant did contend that the conclusion that nondisclosure was inadvertent was in error, he did not even suggest that the *Swenson I* court had reached that conclusion by considering the October 7, 1986, letter. By failing to raise this issue before the supreme court, appellant has effectively waived his right to raise the issue in this court.

We shall, nevertheless, address the issue on its merits.

which might have occurred was ameliorated at trial.

*Swenson I*, 396 N.W.2d at 858.

Further, there is no indication that the *Swenson I* court did not base its opinion on a full review of the record. The following portion of the trial transcript reveals that appellant personally took part in the decision at trial to abandon any challenge to nondisclosure of the report.

> [DEFENDANT'S ATTORNEY]: Your Honor, it's my understanding that the State will agree that the results of the examination done by David Peterson as contained in laboratory file number 8560684 may be introduced into evidence. If the State agrees that that can be introduced without the calling of the laboratory analyst, then we will withdraw the motion that we previously made for a mistrial.
>
> I might state for the record, Your Honor, that I have discussed this matter with my client, Mr. Richard Swenson, who is present. Mr. Swenson has requested that we proceed, and at this time that I withdraw the motion we previously made for a mistrial.

At no time has appellant challenged this decision made by trial counsel and by appellant himself.

Finally, our present review of the trial transcript which was before the *Swenson I* court convinces us that the prosecutor first learned of the exculpatory report during the testimony of the arson investigator, Mr. Berry. The record of the in-chambers proceedings is susceptible of no other interpretation. The trial court aptly summed up the state of affairs:

> THE COURT: Just so the record is clear, and, counsel, you can comment on this as well, and then I'll give you an opportunity to respond, [prosecutor], when we last left this matter there was a question raised by Mr. Berry's testimony concerning lab reports. He did not bring his file with him, and apparently there were some lab reports that were available somewhere or another that had never been disclosed to the defense, and that had never been referred to—in fact, had never been disclosed to the county attorney.

That assessment by the trial court has substantial support in the record and is accepted by this court.

Appellant did not suffer any prejudice during the conduct of his 1986 appeal. The issue he would have us now address in the context of *Strickland* is the willfulness of prosecutorial nondisclosure of an exculpatory report. Not only was that issue waived in the trial court, but an independent review of the record clearly sustains the trial court's finding of inadvertence. Prosecuting and defense attorneys at trial learned of the exculpatory report at the same moment.

## DECISION

Affirmed.