STATE OF MINNESOTA

IN SUPREME COURT

A14-2187

Court of Appeals                                                    Dietzen, J.
                                                         Took no part, Chutich, J.

State of Minnesota,

                    Respondent,

vs.                                                      Filed: August 17, 2016
                                                         Office of Appellate Courts
August Latimothy Fleming,

                    Appellant.

_____

Lori Swanson, Minnesota Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant Hennepin County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      Minnesota Statutes § 244.10, subd. 5a(b) (2014), allows the district court to impose a sentence beyond the presumptive range based on any aggravating factor, even if the aggravating factor is part of the same course of conduct as another offense.

2.       The district court did not abuse its discretion in imposing an upward durational departure because the firing of a gun six times in a park with many children

present made appellant's illegal possession of the gun significantly more serious than that typically involved in the commission of the offense, even if the firing of the gun was part of the same course of conduct as an assault offense.

Affirmed.

O P I N I O N

DIETZEN, Justice.

Appellant August Latimothy Fleming pleaded guilty to possession of a firearm by an ineligible person and second-degree assault. The district court imposed an upward durational sentencing departure for the possession conviction because Fleming fired the gun six times in a park filled with children, thereby creating a greater-than-normal danger to the safety of other people. Fleming appealed, arguing that the firing of the gun related only to the assault conviction and that conduct underlying the assault conviction could not be used to support an upward departure for the possession conviction. The court of appeals affirmed, explaining that the plain language of Minn. Stat. § 244.10, subd. 5a(b) (2014), allowed the district court to impose an upward departure for Fleming's possession conviction based on the greater-than-normal danger that Fleming caused to the safety of other people, where the greater danger arose from the same course of conduct as his illegal possession of a firearm. Because we conclude that the upward departure was authorized by the plain language of section 244.10, subdivision 5a(b), we affirm.

I.

Fleming's conviction and sentence arose out of a shooting that occurred on the evening of October 3, 2012, at Folwell Park in north Minneapolis. The incident was

2

captured on a video surveillance camera in the park. Ten young men, including Fleming and the person who Fleming shot (John Doe), were playing pick-up basketball at the park. The park is located near a busy street. There were other people present on the basketball court and in the immediate vicinity, including several younger children. As the players moved to one end of the court, the younger children moved to the other end of the court to play. Shortly thereafter, the cameras captured a scuffle in the pick-up game and a brief chase between Fleming and Doe. Doe appeared to have a disagreement with one of Fleming's teammates or possibly Fleming. Doe then walked to the end of the basketball court, picked up a knife, walked toward Fleming, and stabbed Fleming in the left cheek. Fleming backed away and moved across midcourt toward the baseline, and Doe briefly pursued him. The standoff appeared to be ending, but then one of Fleming's friends retrieved a backpack and walked over to Fleming. Although the backpack belonged to the friend and not Fleming, Fleming knew that there was a handgun inside. Fleming withdrew the handgun from the backpack, brandished the handgun, advanced toward Doe, and deliberately fired the handgun six times in the direction of the quickly retreating Doe.

Although Doe was not struck by any of the bullets, the shots were fired toward the street and in the direction of children and young people, placing them in danger. The entire incident—from Doe's assault of Fleming to Fleming's discharge of the firearm—took less than 2 minutes. Fleming went to the hospital and received four stitches for the stab wound in his left cheek.

The State charged Fleming with one count of possession of a firearm by an ineligible person, Minn. Stat. § 624.713, subd. 1(2) (2014),[1] along with one count of second-degree assault, Minn. Stat. § 609.222, subd. 1 (2014). The State also filed a notice of intent to seek an upward sentencing departure, alleging that the crimes posed a greater-than-normal danger to others, were committed in a public park, and were committed in the presence of children.

Fleming subsequently pleaded guilty to both charges and waived his right to have a jury decide whether aggravating factors existed to support an upward departure in his sentence. *See State v. Jones*, 745 N.W.2d 845, 851 (Minn. 2008) (stating that a defendant is entitled to a jury determination of facts relevant to an aggravated sentence). The district court found the existence of several aggravating factors. Specifically, Fleming's conduct was more egregious than the typical offense, which normally involves simple possession. Moreover, Fleming put a large number of individuals in real and significant danger of bodily harm as a result of firing a handgun six times during a time of peak usage of the park by the public. The court noted that young children and young adults froze during the shooting and then "ran in shock and horror to find each other." Based on its findings, the district court sentenced Fleming to serve 90 months in prison for the possession conviction, which was an upward durational departure from the 60-month presumptive sentence. *See* Minn. Stat. § 609.11, subd. 5(b) (2014); Minn. Sent. Guidelines 2.E.1. The district court

---

[1]     Fleming was adjudicated delinquent for the theft of a firearm in October 2009 and was therefore prohibited from possessing a firearm.

also sentenced Fleming to serve a concurrent presumptive 36-month prison term for the assault conviction.[2]   The court, however, stayed execution of both sentences for 8 years.  Minn. Stat. § 609.11, subds. 5(a), 9 (2014); Minn. Sent. Guidelines 2.D.1. The stay of execution was a downward dispositional departure.  The court justified the downward dispositional departure on the grounds that Fleming cooperated with the police, displayed remorse for his actions, and was amenable to probation.

When Fleming later violated the terms of his probation, the district court executed his sentence.  Fleming appealed the sentence imposed by the district court,[3] arguing that the firing of the gun related only to the assault conviction and that conduct underlying the assault conviction could not be used to support an upward departure for the possession conviction.  The court of appeals affirmed, explaining that the plain language of Minn. Stat. § 244.10, subd. 5a(b), allowed the district court to impose "an upward durational sentencing departure for Fleming's firearm-possession conviction based on the greater-than-normal danger that Fleming caused to the safety of other people in Folwell Park, where the greater danger arose from the same course of conduct as his illegal possession

---

[2]   Fleming concedes that he properly received "more than one criminal sentence for conduct involving a single behavioral incident and a single victim" because Minn. Stat. § 609.035, subd. 3 (2014), provides that "[n]otwithstanding section 609.04, a prosecution for or a conviction of a violation of section 609.165 or 624.713, subdivision 1, clause (2), is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct."

[3]   Fleming's appeal was timely under *State v. Fields*, 416 N.W.2d 734, 736 (Minn. 1987) (holding that a defendant may wait until probation is revoked before challenging his or her sentence); *see also State v. Losh*, 721 N.W.2d 886, 892 (Minn. 2006) (holding that Minn. Stat. § 244.11, subd. 3 (2014), which imposes a time limit on sentencing appeals, is unconstitutional).

of a firearm." *State v. Fleming*, 869 N.W.2d 319, 330 (Minn. App. 2015). We granted Fleming's petition for review.

## II.

Fleming argues the district court erred when it imposed the upward departure because the law limits the imposition of an aggravated sentence to those situations in which the offense of conviction is committed in a particularly serious way, the firing of the gun related solely to the assault offense, and conduct underlying the assault conviction cannot be used to impose an upward departure for the possession conviction. The State counters that Minn. Stat. § 244.10, subd. 5a(b), allowed the district court to impose an upward departure based on any aggravating factor arising from the same course of conduct.

We review a district court's departure from a presumptive sentence for an abuse of discretion. *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009). If the district court's reasons for departure are legally improper or inadequate, the departure will be reversed. *Taylor v. State*, 670 N.W.2d 584, 588 (Minn. 2003). To determine whether the district court's reasons were legally proper in Fleming's case, we must interpret the language of Minn. Stat. § 244.10, subd. 5a(b). Issues of statutory interpretation present questions of law that we review de novo. *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002).

Fleming was convicted of possession of a firearm by an ineligible person, Minn. Stat. § 624.713, subd. 1(2) (providing that "a person who has been convicted of, or adjudicated delinquent or convicted as an extended jurisdiction juvenile for committing, in this state or elsewhere, a crime of violence" is ineligible to possess a firearm), and second-degree assault, Minn. Stat. § 609.222, subd. 1 ("Whoever assaults another with a dangerous

6

weapon may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both.").[4] As previously indicated, the district court found the existence of aggravating factors and sentenced Fleming to 90 months in prison for the possession conviction, which was an upward durational departure from the presumptive sentence of 60 months, and a concurrent 36-month sentence for the assault conviction.

To resolve the dispute between the parties regarding the sentence imposed, we must first determine whether section 244.10, subdivision 5a(b), allows a district court to impose a sentence beyond the presumptive range based on any factor that makes the sentenced offense significantly more serious, even if the aggravating factor is part of the same course of conduct as another offense. If so, we must next consider whether the firing of the gun six times in a park filled with children made the illegal possession of the gun more serious. We will address each issue in turn.

A.

The power to define the conduct that constitutes a criminal offense and to fix the punishment for the offense lies with the Legislature. Minn. Const. art. 3, § 1; *State v. Olson*, 325 N.W.2d 13, 17-18 (Minn. 1982); *State v. Meyer*, 228 Minn. 286, 293, 37 N.W.2d 3, 9 (1949). But the imposition of a sentence in a particular case within the

---

[4]     Under Minn. Stat. § 609.02, subd. 10 (2014), "assault" is defined as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another."

limits set by the Legislature is a judicial function.  Minn. Const. art. 3, § 1; *Misquadace*, 644 N.W.2d at 68.

The Legislature created the Minnesota Sentencing Guidelines Commission to establish, among other things, "the circumstances under which imprisonment of an offender is proper" and "[a] presumptive . . .sentence for offenders for whom imprisonment is proper."  Minn. Stat. § 244.09, subd. 5(1)-(2) (2014).  The primary consideration of the Commission in establishing or modifying the sentencing guidelines is public safety.  *Id.*  Additionally, by establishing the Commission, the Legislature has adopted a policy of maintaining uniformity, proportionality, rationality, and predictability in sentencing.  *Id.*  Thus, a court must impose the presumptive sentence—that is, a sentence within the applicable disposition and range—"unless there exist identifiable, substantial, and compelling circumstances to support a departure."  Minn. Sent. Guidelines 2.D.1.; *accord Edwards*, 774 N.W.2d at 601.  The guidelines allow the district court to depart from the presumptive sentence if the court finds the presence of mitigating or aggravating factors that justify a departure in a specific case.  The guidelines set forth a nonexclusive list of mitigating and aggravating factors that may be used to depart.  Minn. Sent. Guidelines 2.D.3.

The Legislature has enacted laws to limit the sentence that may be imposed in certain circumstances.  For example, the Legislature has limited the punishment a defendant may receive when the criminal conduct in question constitutes more than one offense under Minnesota law.  Minn. Stat. § 609.035 (2014).  Under section 609.035, if an offender's conduct constitutes more than one offense, the person may only be punished for

one of the offenses, subject to certain exceptions. *State v. Banks*, 331 N.W.2d 491, 493 (Minn. 1983); *State v. Zuehlke*, 320 N.W.2d 79, 81 (Minn. 1982). The Legislature has also enacted laws to limit the scope of judicially created rules regulating sentencing. For example, in *Vickla v. State*, we acknowledged that, by enacting Minn. Stat. § 609.1095, subd. 2 (2014) (the dangerous-offender statute), the Legislature had carved out an exception to the judicially created rule that had required greater-than-double departures to be supported by a "severe" aggravating factor. 793 N.W.2d 265, 271 (Minn. 2011). Specifically, we noted that section 609.1095 provides that a court has the discretion to impose a greater-than-double departure without finding severe aggravating factors. *Id.* (citing *Neal v. State*, 658 N.W.2d 536, 545-46 (Minn. 2003)).

With these principles in mind, we turn to the question of whether Minn. Stat. § 244.10, subd. 5a, allows a court to upwardly depart from the presumptive sentence for any aggravating factor that makes the sentenced offense significantly more serious, even if the aggravating factor is part of the same course of conduct as another offense.

Minnesota Statutes § 244.10 covers a broad range of topics, including which procedures should be followed at a sentencing hearing, when deviations from the sentencing guidelines are permissible, and which aggravating factors may be considered by a sentencing court. Minn. Stat. § 244.10, subds. 1, 2, 5a. The specific provision at issue in this case was enacted in 2009 and provides:

9

Notwithstanding section 609.04[5] or 609.035, or other law to the contrary, when a court sentences an offender for a felony conviction, the court may order an aggravated sentence beyond the range specified in the sentencing guidelines grid based on *any aggravating factor arising from the same course of conduct.*

Minn. Stat. § 244.10, subd. 5a(b) (emphasis added). When interpreting a statute, we give words and phrases their plain and ordinary meaning. *State v. Struzyk*, 869 N.W.2d 280, 284 (Minn. 2015). If the Legislature's intent is clear from the plain and unambiguous statutory language, we do not engage in any further construction.[6] *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011).

Subdivision 5a(b) contains two phrases that are important to our analysis. The relevant phrases are "notwithstanding . . .609.035" and "any aggravating factor arising from the same course of conduct." The phrase "notwithstanding . . .609.035," plainly carves out the application of section 609.035 from the circumstances set forth in section 244.10, subdivision 5a(b). We have previously said that "[t]he word 'notwithstanding' is

---

[5]    Minnesota Statutes § 609.04 (2014) provides that a defendant may not be convicted for both a crime and its lesser included offense. This statute is not at issue in this case.

[6]    Fleming also argues that the legislative history of Minn. Stat. § 244.10, subd. 5a(b), establishes that the Legislature enacted the statute as a direct response to our decisions in *State v. Jones*, 745 N.W.2d 845 (Minn. 2008), and *State v. Jackson*, 749 N.W.2d 353 (Minn. 2008). According to Fleming, the Legislature merely intended to empower district courts to consider aggravating factors that also constitute elements of *uncharged* or *unsentenced* conduct. Thus, Fleming contends that we should rely on our more recent decision of *State v. Edwards*, 774 N.W.2d 596 (Minn. 2009). Because Minn. Stat. § 244.10, subd. 5a(b), is unambiguous as applied to Fleming's sentence, we decline to consider the legislative history of the statute. And we need not rely on our case law when a controlling statute resolves the issue before us.

the equivalent of the words 'in spite of.' " *Governmental Research Bureau, Inc. v. Borgen*, 224 Minn. 313, 322, 28 N.W.2d 760, 765 (1947). Section 609.035 states that "if a person's conduct constitutes more than one offense . . .the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." In determining whether section 609.035 applies, we have considered whether the offenses were committed as part of the same course of conduct.[7] *Zuehlke*, 320 N.W.2d at 82. Thus, the plain meaning of the phrase "notwithstanding . . .609.035" is that the limitation in Minn. Stat. § 609.035 does not prevent a district court from imposing an aggravated sentence under the circumstances set forth in section 244.10, subdivision 5a(b).

The second phrase, "any aggravating factor arising from the same course of conduct," is equally plain. According to Minn. Stat. § 244.10, subd. 5a(a), aggravating factors "include, but are not limited to" fourteen situations enumerated in that subdivision, all of which are situations in which a defendant's conduct may be deemed significantly more serious than that typically involved in the commission of the sentenced offense. Moreover, this definition of "aggravating factor" is consistent with our case law, *see, e.g.*, *Tucker v. State*, 799 N.W.2d 583, 586 (Minn. 2011), and Minn. Sent. Guidelines 2.D.3.b.

---

[7] The approach we follow under section 609.035 in determining whether nonintentional crimes or a mixture of nonintentional and intentional crimes are part of the same course of conduct is to analyze the facts and determine whether the offenses "[arise] out of a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." *Zuehlke*, 320 N.W.2d at 81 (quoting *State v. Sailor*, 257 N.W.2d 349, 352 (Minn. 1977)). "The approach used in determining whether two or more intentional crimes [are] part of the same course of conduct is to focus on the factors of time and place and also to consider whether the . . .conduct involved [is] motivated by an effort to obtain a single criminal objective." *Id.* at 81-82 (citing *State v. Johnson*, 273 Minn. 394, 405, 141 N.W.2d 517, 525 (1966)).

11

The phrase "aggravating factor" is preceded by the word "any." Minn. Stat. § 244.10, subd. 5a(b). The word "any" means "[o]ne, some, every, or all without specification." *The American Heritage Dictionary of the English Language* 81 (5th ed. 2011). The word "conduct" generally refers to one's acts or behavior, not the commission of a particular crime. *See id.* at 384 (defining "conduct" as "[t]he way a person acts, especially from the standpoint of morality and ethics"). And, in the context of the phrase "course of conduct," the word "course" means "[d]evelopment in a particular way; progress." *Id.* at 419. Thus, the phrase "any aggravating factor arising from the same course of conduct" allows a district court to consider the entirety of a defendant's conduct in determining whether the defendant committed the sentenced offense in a manner that is significantly more serious than that typically involved in the commission of the sentenced offense.

We conclude that under Minn. Stat. § 244.10, subd. 5a(b), an aggravating factor is conduct that renders the sentenced offense significantly more serious than typically involved in the commission of the sentenced offense. The statute allows a court to base an upward sentencing departure on *any* aggravating factor, even if the aggravating factor relates, or arises in connection with another offense committed during the same course of conduct.

B.

We next consider Fleming's argument that the firing of the gun six times in a park filled with children did not demonstrate that his illegal possession of the gun was significantly more serious than typical cases involving possession of firearm by an ineligible person. According to Fleming, his possession offense was complete when "he

12

received the backpack from his friend and pulled out a gun" and therefore the subsequent firing of the gun related only to the assault offense.

Despite Fleming's assertion to the contrary, the possession offense did not end when he pulled the gun out of the backpack. Possession of a firearm by an ineligible person is a continuing offense. *State v. Banks*, 331 N.W.2d 491, 494 (Minn. 1983); *see also State v. Lawrence*, 312 N.W.2d 251, 254 (Minn. 1981) (discussing the continuing-crime doctrine). Consequently, Fleming continued to commit the possession offense when he fired the gun six times in a park filled with children. Moreover, the district court found the manner in which Fleming violated the possession statute "was more egregious than the typical such case, which normally involves simple possession." The court emphasized "the large number of potential victims put in real and significant danger as a result of his firing the handgun six times in a public park during the height of its use that day." Due to the greater-than-normal danger to others, the court imposed a 90-month sentence, which was an upward departure from the presumptive 60-month sentence.[8]

The district court correctly applied section 244.10, subdivision 5a(b) to the facts of this case. The firing of the gun six times in a park filled with children made Fleming's

_____

[8]    The aggravating factors relied on by the district court are not enumerated in the guidelines. *See* Minn. Sent. Guidelines 2.D.3.b. The factors listed in the guidelines, however, are non-exclusive, *id.* at 2.D.3., and courts may consider other factors that demonstrate identifiable, substantial, and compelling reasons for departure, *id.* at 2.D.1. Fleming does not contest that the aggravating factors found by the district court are an appropriate basis for departure on the assault conviction; rather, Fleming argues that the factors are not an appropriate basis to depart on the possession offense.

illegal possession of the gun significantly more serious than the typical possession offense, even if the firing of the gun was part of the same course of conduct as the assault offense.[9]

## III.

For the foregoing reasons, we conclude that the district court did not abuse its discretion when it imposed an upward durational sentencing departure for the possession conviction.

Affirmed.

CHUTICH, J., took no part in the consideration or decision of this case.

---

[9] Here, Fleming's action of taking the firearm from the backpack was immediately followed by the aim and discharge of the firearm, which arose out of the same course of conduct. The events occurred in a total of about 30 seconds and thus, there was a unity of time and place. And the district court's findings establish that Fleming would not have possessed the firearm without his intent to discharge it.

14