*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1131**

State of Minnesota,
Respondent,

vs.

Lenny Clyde White,
Appellant.

**Filed January 30, 2017
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-13-19155

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Frank Richard Gallo, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Halbrooks, Judge; and

Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges the revocation of his probation and execution of his sentence,

arguing that the district court abused its discretion by finding that the need for confinement

outweighs public policies favoring probation. Because the district court properly determined that the need for appellant's confinement outweighs the policies favoring probation, we affirm.

## FACTS

Appellant Lenny Clyde White is required to register as a predatory offender based on a 2000 conviction of false imprisonment. In June 2013, White was charged with failing to register as a predatory offender, in violation of Minn. Stat. § 243.166, subd. 5(a) (2012). Over the course of White's criminal proceedings, the district court conditionally released him, and later revoked his conditional release, on three separate occasions. It revoked his conditional release twice for failing to abstain from using alcohol and controlled substances and once for violating an order for protection in an unrelated matter.

White pleaded guilty to failure to register as a predatory offender, and the district court stayed execution of a 36-month prison sentence, ordered White to serve 365 days in a workhouse, and placed him on probation in July 2014. Because the presumptive sentence was 31-43 months in prison, White's sentence constituted a downward dispositional departure.

In January 2016, White's probation officer filed a probation-violation report, alleging that White (1) violated multiple conditions of his probation by missing multiple appointments with his probation officer, (2) failed to abstain from alcohol use, and (3) failed to report for random drug testing on eight occasions. White denied the allegations in the report.

2

The district court found that White violated the conditions of his probation and that his violations were intentional and inexcusable. It also concluded that White was unamenable to probation and that the need for confinement outweighs the public policies favoring probation. To support its decision, the district court stated that White was "in need of correctional treatment that can only be provided by confinement" and that "[c]ontinued probation would unduly depreciate the seriousness of the offense." The district court revoked White's probation and executed his 36-month prison sentence. This appeal follows.

## D E C I S I O N

White argues that the district court abused its discretion by relying exclusively on his prior failures on probation to find that the need for his confinement outweighs the policies favoring probation. The district court "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980). "The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Id.* at 250.

Prior to revoking probation, a district court must follow the three-factor analysis identified in *Austin* by (1) designating the specific condition or conditions that were violated, (2) finding that the violation was intentional or inexcusable, and (3) finding that the need for confinement outweighs the policies favoring probation. *Id.* Because White does not challenge the district court's findings on the first two *Austin* factors, our analysis

3

is limited to whether the district court abused its discretion by finding that the third *Austin* factor was satisfied.

The third *Austin* factor requires the district court to "balance the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety, and base [its] decisions on sound judgment and not just [its] will." *State v. Modtland*, 695 N.W.2d 602, 606-07 (Minn. 2005) (quotations omitted). This factor is only satisfied if the district court finds

> "on the basis of the original offense and the intervening conduct of the offender that:
> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked."

*Id.* at 607 (quoting *Austin*, 295 N.W.2d at 251). The district court may also consider a defendant's downward dispositional departure when deciding whether to revoke probation. *State v. Fleming*, 869 N.W.2d 319, 331 (Minn. App. 2015), *aff'd on other grounds*, 883 N.W.2d 790 (Minn. 2016); *State v. Moot*, 398 N.W.2d 21, 24 (Minn. App. 1986), *review denied* (Minn. Feb. 13, 1987).

Here, the district court concluded that the need for confinement outweighs the policies favoring probation because White "is in need of correctional treatment that can only be provided by confinement" and "[c]ontinued probation would unduly depreciate the seriousness of [White's] offense and the numerous violations."

4

**Confinement Necessary to Effectively Provide Correctional Treatment**

White argues that the district court abused its discretion because it focused only on his past failures while on probation. The district court found that White was discharged from treatment and violated his current probation by failing to make scheduled appointments with his probation officer, failing to abstain from alcohol use, and failing to submit to random testing. The district court also determined that White's case "was a presumptive prison sentence," but that he "received a downward dispositional departure and the benefit of probation as part of a plea negotiation." It referenced his "numerous violations" on his current probation. Because the district court clearly referenced more than his past probationary failures, we disagree with White's characterization of the district court's order.

Next, White contends that the phrase "intervening conduct," as stated by the supreme court in *Austin* and *Modtland* is limited to post-sentencing conduct when a district court decides whether to revoke probation and that the district court erred by considering his prior probationary failures and conditional-release violations. But we note that the supreme court has concluded that a district court did not abuse its discretion by revoking an offender's probationary status based on his "lengthy history of criminal activity and chronic probation and treatment failures." *State v. Osborne*, 732 N.W.2d 249, 256 (Minn. 2007). And we do not address this argument because White's conduct post-sentencing by itself provided the district court with a sufficient basis to revoke his probation. *See State v. Vang*, 847 N.W.2d 248, 265 & n.9 (Minn. 2014) (declining to resolve an issue that was not necessary to dispose of the case).

5

In *Austin*, the supreme court stated that "it was not unreasonable to conclude that treatment had failed" when the offender failed to take advantage of treatment opportunities or "show a commitment to rehabilitation." 295 N.W.2d at 251. White began violating the conditions of his probation six months after he was sentenced. Over a one-year period, he failed to submit to random testing eight times, tested positive for alcohol on three separate occasions, and provided diluted test samples on four other occasions. In addition, he failed to meet with his probation agent and was discharged from treatment. Because White's probation violations are numerous and he was discharged from treatment, we conclude that the district court did not err by finding that White "is in need of correctional treatment that can only be provided by confinement."

**Unduly Depreciating the Seriousness of the Violation**

The state asserts that the district court also stated an alternative ground for revoking White's probation. We agree.

The third *Austin* requirement can be satisfied if the district court finds that "(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; *or* (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked." *Modtland*, 695 N.W.2d at 607 (emphasis added). Here, the district court determined that a continuation of White's probation would unduly depreciate the seriousness of his violations. White did not challenge this finding. We conclude that this determination provided the district court with an alternative basis to revoke White's probation.

Because White's probation violations and underlying offense provided the district court with two sufficient and independent grounds to revoke his probation, we conclude that the district court properly exercised its discretion.

**Affirmed.**