*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0323**

State of Minnesota,
Respondent,

vs.

Timothy Wayne Wells,
Appellant.

**Filed June 3, 2024**
**Affirmed**
**Slieter, Judge**

Crow Wing County District Court
File No. 18-CR-13-4855

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Jaqueline R. Fogal, Assistant County Attorney, Brainerd, Minnesota (for respondent)

Mark D. Kelly, St. Paul, Minnesota (for appellant)

Considered and decided by Schmidt, Presiding Judge; Slieter, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SLIETER**, Judge

Appellant challenges the revocation of his probation and the district court's denial of his postconviction claim of ineffective assistance of counsel without an evidentiary hearing. Because the district court acted within its discretion to revoke appellant's probation and deny his postconviction petition, we affirm.

## FACTS

In April 2015, the district court sentenced appellant Timothy Wayne Wells to 117 months' imprisonment following his conviction of a second-degree controlled-substance offense. The district court granted a downward dispositional departure and stayed execution for 40 years, placing Wells on supervised probation. Clearwater County probation agents supervised Wells for most of his probation while the originating agency, Crow Wing County, monitored his probation.

Between September 2017 and February 2022, Wells violated the terms of his probation by using methamphetamine on at least seven occasions, resulting in four formal probation-violation hearings. During probation, Wells entered multiple treatment programs but often used methamphetamine during or following treatment. Following each of the four hearings, the district court reinstated Wells on probation and ordered Wells to reenter treatment. In 2020, Wells moved to Hawaii with his wife and two young children, without permission from his probation agent, and enrolled in treatment there. Wells eventually obtained permission to reside in Hawaii but periodically reported in person to

2

his Clearwater County probation agent. He completed his most recent chemical-dependency treatment in Hawaii in August 2022.

In October 2022, while in Minnesota to meet with his Clearwater County probation agent, Wells admitted that he had used methamphetamine, an admission the agent confirmed with a positive drug test. The agent filed the fifth formal probation-violation report in this case shortly thereafter. In December 2022, the district court held a probation-violation hearing during which Wells, who was represented by counsel, admitted that he used methamphetamine and that he did so intentionally. The district court accepted Wells' admission and the matter proceeded to a contested probation-revocation hearing.

During the January 2023 revocation hearing, the state requested execution of Wells' sentence and Wells requested to be reinstated on probation. The Crow Wing County probation agent who had monitored Wells' Clearwater County probation testified at the hearing. The Clearwater County probation agent who supervised Wells, and whom the parties expected would be present to testify, was unavailable.

The Crow Wing probation agent testified that he was familiar with Wells' probation file, had communicated with the Clearwater probation agent about Wells' supervision once per year, and had spoken with that agent about Wells' October probation violation regarding methamphetamine use. He agreed with the following statement that the Clearwater probation agent made in the probation-violation report: "At this time, this agent is uncertain as to what more can be done to help the Defendant address his ongoing substance use and lack of self accountability."

Wells testified that he had completed an outpatient treatment program sometime between March and October 2022 but had not engaged in treatment since testing positive at the end of October. When the district court asked whether probation had received verification of Wells' treatment in Hawaii, the Crow Wing probation agent stated that he had not "seen any documentation that [Wells] has done any treatment in Hawaii." And in response to the district court's question, Wells stated that the Clearwater probation agent could provide that verification.

The district court revoked Wells' probation and executed his 117-month sentence. Wells retained new counsel and appealed to this court claiming that the district court abused its discretion by revoking his probation. This court stayed the appeal to allow Wells to file a postconviction petition in the district court to develop a record on a claim of ineffective assistance of counsel. The district court denied the postconviction petition without an evidentiary hearing. Wells appeals.

**DECISION**

**I.      The district court acted within its discretion by revoking Wells' probation.**

When a defendant violates a condition of probation, a district court may revoke probation and execute the previously stayed sentence, continue probation, or order intermediate sanctions. Minn. Stat. § 609.14, subds. 1(a), 3 (2022). The district court has broad discretion in determining whether sufficient evidence exists to revoke probation, and we will reverse only if there is a clear abuse of that discretion. *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980). When revoking probation, a district court must (1) specify the conduct or conditions that the probationer violated, (2) find that the violation was

4

intentional or inexcusable, and (3) find that the need for confinement outweighs the policies favoring probation. *Id.* at 250. A district court must be mindful that "[t]he purpose of probation is rehabilitation and revocation should be used only as a last resort." *Id.*

Though Wells argues in his brief that the state did not establish the second *Austin* factor, Wells admitted during the initial probation-violation hearing that he had used methamphetamine intentionally. Therefore, the district court properly found that the second *Austin* factor was met. *See State v. Modtland*, 695 N.W.2d 602, 606 (Minn. 2005) ("Once a court has made findings that a violation has occurred and has found that the violation was either intentional or inexcusable, the court must proceed to the third *Austin* factor . . . ."). Therefore, we now consider Wells' argument related to the third *Austin* factor.

Regarding the third factor, the need for confinement outweighs the policies favoring probation if at least one of three subfactors is met:

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607 (quoting *Austin*, 295 N.W.2d at 251).

The district court found that the third subfactor was met: that it would unduly depreciate the seriousness of the violation if probation were not revoked. The record supports the district court's finding. Wells was granted a dispositional departure when he

5

was sentenced in 2015. *See State v. Fleming*, 869 N.W.2d 319, 331 (Minn. App. 2015), *aff'd*, 883 N.W.2d 790 (Minn. 2016) (stating that the grant of a downward dispositional departure is a proper consideration when deciding to revoke probation). Further, this is Wells' fifth probation violation that resulted in a formal report, and nearly all prior violations involved the use of methamphetamine. The district court's finding on the third *Modtland* subfactor was well reasoned and supported by the record.

Wells argues that the district court abused its discretion because alternative options for continued community supervision would impress upon Wells the need to avoid further methamphetamine use and the importance of further treatment. But, as the district court explained, Wells continued to use methamphetamine despite his extensive participation in treatment and, moreover, failed to seek treatment after his most recent methamphetamine use. The district court concluded that Wells' difficulty staying sober, despite the serious consequence—for him and his family—of having to serve his lengthy prison sentence, supported the need to revoke his probation. The record supports the district court's determination.

And we are not persuaded otherwise by Wells' claim that the violations were merely "technical violations," contravening *Austin*'s mandate that revocation "cannot be a reflexive reaction to an accumulation of technical violations." *See Austin*, 295 N.W.2d at 251 (quotation omitted). He argues that his violations were merely technical because there has been no allegation that he engaged in any behavior resulting in a criminal prosecution or conviction, citing Minn. Stat. § 244.196, subd. 6 (2022) (defining "technical violation" as "any violation . . . except an allegation of a subsequent criminal act that is alleged in a

formal complaint, citation, or petition"). But as this court recently observed, *Austin* does not reference the statutory definition of "technical violation" and reiterated that any violation of a condition relevant to the crime committed forms a proper basis upon which to revoke probation. *State v. Smith*, 994 N.W.2d 317, 321 n.2, 321-22 (Minn. App. 2023), *rev. denied* (Minn. Sept. 27, 2023).

In sum, the district court acted within its discretion by revoking Wells' probation.

**II.     The district court acted within its discretion by denying Wells' postconviction petition claiming ineffective assistance of counsel without an evidentiary hearing.**

"[W]e review a denial of a petition for postconviction relief, including a denial of relief without an evidentiary hearing, for an abuse of discretion." *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013). Legal issues raised in a postconviction petition are reviewed *de novo*, and factual issues are reviewed for whether the record sufficiently sustains the postconviction court's findings. *Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015). We will not reverse an order denying postconviction relief "unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id.* (quotation omitted).

Pursuant to Minn. Stat. § 590.04, subd. 1 (2022), a district court must hold an evidentiary hearing on a petition for postconviction relief "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." To obtain an evidentiary hearing on a postconviction claim of ineffective assistance of counsel, a petitioner must allege facts that, if proven by a fair preponderance of the

7

evidence, would satisfy the two-prong *Strickland* test. *Nicks*, 831 N.W.2d at 504 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The postconviction court must consider the allegations and the files and records in the light most favorable to the petitioner and determine whether "facts material to the application of the *Strickland* test are in dispute." *Id.* at 506.

We review claims of ineffective assistance of counsel *de novo*. *State v. Edwards*, 736 N.W.2d 334, 338 (Minn. App. 2007), *rev. denied* (Minn. Sept. 26, 2007). The *Strickland* test requires a defendant to prove that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Nicks*, 831 N.W.2d at 504 (citing *Strickland*, 466 U.S. at 687).

Wells argues that his original counsel's performance was deficient because he (1) failed to adequately prepare for the revocation hearing because he did not obtain certain documents from the Clearwater probation agent and (2) should have requested a continuance when the Clearwater probation agent did not appear to testify at the revocation hearing.

Because there is no reasonable probability that the documents or testimony would have changed the result of the proceeding, we affirm based upon the second *Strickland* prong. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

As to the documents, Wells asserts that the Clearwater probation agent possessed verification that Wells completed treatment in Hawaii sometime before October 2022. He

argues that these documents would support Wells' credibility and refute the Crow Wing probation agent's testimony that the Clearwater agent never received that verification. But whether Wells engaged in treatment *before* October was immaterial to the district court's decision to revoke probation. The district court based its decision on Wells' methamphetamine use in October 2022, after Wells completed his most recent treatment in August 2022, and his failure to reenter treatment prior to the January 2023 revocation hearing. The district court also stated that it found Wells' testimony, which included a description of his completion of treatment in Hawaii, credible. And the Clearwater probation agent's violation report, which the district court reviewed, states that Wells completed an outpatient program in August 2022. In sum, the district court had all the information that Wells now claims it was error for his attorney not to obtain.

Regarding the need to obtain the Clearwater probation agent's testimony, Wells asserts that the Clearwater agent would have testified that he did not recommend revoking probation. Even if we accept that as true, "[t]he district court is not required to adopt a recommendation of the probation department when determining whether to revoke probation and order imprisonment." *State v. Fortner*, 989 N.W.2d 368, 375 (Minn. App. 2023). Indeed, the district court did not cite probation's recommendations as a basis for its decision to revoke, and its order denying Wells' postconviction petition demonstrates that a contrary recommendation would not have affected its decision.

Therefore, Wells has not demonstrated that a reasonable probability exists that the documents or the Clearwater probation agent's testimony would have changed the result of the proceeding. As a result, Wells has not established a claim of ineffective assistance of

counsel.  The district court acted within its discretion by denying Wells' postconviction petition without an evidentiary hearing.

**Affirmed.**